We have five cases before the court, before this panel this morning. One of the cases is submitted on the briefs, and we've attended to that. So we'll hear arguments in four cases this morning. The first case is Lambeth Magnetic Structures, LLC v. Seagate Technology, U.S. Holdings, Inc. Mr. Lamkin, you have reserved five minutes of your time for rebuttal, correct? That's correct. Mr. Gross, you have reserved a minute of your time. Are you going to devote a minute of your time for your cross-appeal? Yes, solely on the issue on the cross-appeal, the enablement, Your Honor. If that issue hasn't been resolved by this court, whether we can cross-appeal, I have a minute. If it was resolved, I would just let it go. Okay. Okay, Mr. Lamkin, I know you're ready. Thank you. Thank you, and may it please the court. I'd like to focus on three issues today. First, claim construction. Dr. Lambeth's invention is, as Claim 1 says, a magnetic material structure. The district court erroneously added a causation requirement. It required one recited element, the uniaxial anisotropy, to result from another, the symmetry-broken structure. Second, the court excluded his hearsay atomic-level photographs of showing the accused products with the recited structure. Does the causation claim that you say was added, does that change the nature of the claim entirely to where it's no longer found in the specification? Yeah, I think it does, because if you look at the specification, it's actually very clear when it's explaining what the claim terms mean, because it has definitions of the claim terms. So it not only has a definition of uniaxial anisotropy, I keep stumbling over that one, that's Appendix 107, Column 1, 56 to 60. And it never says that has to result from the symmetry-broken structure. And it has a definition of symmetry-broken structure. And that's at 118, Column 23, Line 38 to 41. And it never says that has to cause the uniaxial anisotropy. But the spec actually defines the phrase together, uniaxial symmetry-broken. That phrase, uniaxial symmetry-broken, all three. And this is at 118, Column 23, Lines 34 to 48. And it says it adopts, quote, the phrase uniaxial symmetry-broken to denote the crystallographic characteristics of these uniaxial and nearly uniaxial BCC dematerials. Crystallographic characteristics are what the structure is, what its properties are. It's not why it has those properties. And so the claim itself, if you look right at Claim 1, it says it's a magnetic structure comprising three layers. And then it describes what each of those layers consist of. And then you go to the specification. The specification has definitions of what those terms mean. It seems to me that this importation that you argue, it seems to me that it may be harmless. No, Your Honor. I don't see how it's prejudicial. Oh, no. It's quite prejudicial, Your Honor. Under Network 1, this court can't affirm unless it can say a reasonable jury would have been required to find non-infringement on other grounds. And this is quite the opposite here. This was not only a non-infringement ground that was focused on, presented during closing arguments. So they told the jury, if you're getting anastropomy as a result of other things, then you can't infringe. So they focus it on closing. In the testimony, Dr. Fullerton says it comes from something else. Dr. Nturi says it comes from other things. Dr. Ross says it comes from other things. And they focus on our proof. And Dr. Fullerton is asked whether plaintiff's data shows whether anastropomy was a result of symmetry-broken structure. And he says the data doesn't tell you the origin of the uniaxial behavior. They urge that we have approved causation. And, most critical, if you think about it, we have a structural claim. You can show those structures by saying, look at this picture. You can see this three-layer structure here. Look at this. You can see the hexagonal template with the 111 orientation. Look here. The BCC has a 110 orientation. You can point to it. But on something about causation, you can't point to it and say, look right there. You can see the symmetry-broken structure pushing or punching or pulling or moving in some way in order to cause the uniaxial structure, the uniaxial anastropy. So it's really quite difficult to prove it. And if there's something in our case that was in any way difficult, that would have been the most difficult part. Our expert was reduced to actually using a mathematical formula to examine it to try and prove that causal element. And if there was a weak point, that was it. This is as prejudicial as prejudicial could be. If I could turn now to the hearsay issue briefly. Actually, maybe I back up for just one second. I want to make one point. It's just grammatically, when you say uniaxial and uniaxial symmetry-broken structure, those are just adjectives in front of us. Mr. Lincoln, let me ask you, what are we to make of all of these statements in the specification? And I won't cite to them all, but we all know they're there. To talk so extensively about causation, doesn't that suggest something? Well, first, all those little bullet points that you have on page, I think it's 51 of their brief, they're actually in a section that says, detailed description of preferred embodiments. It's not about the meaning of the claim terms. It's just his explanation of what he observed. And the expert testified that he wrote, he explained why he has all that. And he says that he's an academic, and he sort of wrote it as like an academic paper, because he's trying to teach the audience, page 30,231. So he's explaining that, like, I just did this to try and explain and increase the knowledge of the art. But skilled artisans don't actually have to understand why their inventions work. The inventors don't have to know what the theory underlying it. They just have to set forth something that's a useful invention that's enabled. What do you say is the strongest point in the specification that supports your argument that we don't have to think about causation, it's just purely structure? Can you point to something in the spec that says, here's what shows we're really talking solely about structure here, notwithstanding all of these various citations and discussions about causation? So I think that there's three things I'd point to that are very specific. And that is that when we are talking about the meaning of the claims, and the specification is talking about the meaning of the words, it defines uniaxial anisotropy, and it defines it without causation. It defines symmetry broken, it defines it without causation. And then it defines, and this is 108, or excuse me, 118. I'm sorry, where's this? 118, column 23, lines 34 to 38. And it says that it adopts the phrase uniaxial symmetry broken to denote the crystallographic characteristics of these uniaxial and nearly uniaxial BCC materials. Crystallographic characteristics. That's what it is, what it does, its properties. It's not the scientific theory as to why, what within the claims causes something else. And you just simply can't get out of the phrase uniaxial symmetry broken structure, a causation element. If I say I have a fast red car, it's not fast because it's red, or red because it's fast. It's a car that's both fast and red. It's exactly the same thing we were talking about, uniaxial symmetry broken structure. Are there cases where we've looked at the Chicago elements of style? I saw that cited in the brief.  So I think this court applies ordinary meaning. And the ordinary meaning of these two adjectives followed by the noun, where they're both defined adjectives, the fact that it's uniaxial and symmetry broken followed by a noun, those ordinarily mean that those two things modify the noun. It's a fast red car, it's fast and red, but it's not fast because it's red, or red because it's fast. That's the ordinary meaning. But if you have any doubt, appendix 118, column 23, lines 34 to 38, tell you that it adopts the phrase, this is the whole phrase together, uniaxial symmetry broken to denote the crystallographic characteristics. And I would note that if you go to the abstract, which Seagate cites to say, oh, it has to just be the symmetry broken structure that causes this. It actually identifies, starts by identifying, this is page 91 of the appendix. It starts by identifying the attention. Which page is this? 91, the appendix.  And it starts, and it says, a thin film structure, magnetic devices. So we're already starting off with structure. But then it goes on at length to explain everything that's in there. And it says that the invention provides a body-centered cubic symmetry broken structure. So you've got body-centered cubic, BCC, symmetry broken, grown on a hexagonally shaped template. So again, now we've got our templates there. In the presence of a symmetry breaking mechanism, so you've got that deposition on an angle, or in a magnetic field, is provided to promote oriented uniaxial properties. So all these things are done to promote oriented uniaxial properties. And then four lines from the bottom, it actually goes on and says, right after it says the words uniaxial, magnetic properties, it says where they're from. It says uniaxial magnetic properties are from successively deposited film layers that result in a new magnetic layer structures. So again, the abstract pointing to a lot of different things that are causal here, a lot of different things. And you look at the claim, the claim recites these things because it's a structure. He didn't claim why the structure works. He claimed the structure he invented, that works. Could you address some of the evidentiary issues? Yes, so I could turn to the hearsay issue in particular. I think it's well established that hearsay is the statement by a person. I don't think any disputes that. And that's common ground. And that's why photographs, that's why machine measurements aren't hearsay. The district court here came out with the opposite conclusion. And I think the district court basically said photographs are hearsay and excluded our atomic level detailed photos showing the accused structures. And I think if the court starts with page 30,392, I hate that, volume two, the appendix. The problem here is that your expert annotated or manipulated the. So that's actually. This is right. No, that actually isn't the problem. If the court would turn to that page of the transcript, what we're actually talking about are unannotated images. Line 13 on page 30,392. We're talking about pictures taken of a Seagate drive with a microscope. And the judge asks, well, what you created by the expert, what do you mean other than taking the picture? And nobody says, oh, it was annotated. But if you turn to the next page, Lambeth Council, this is on page 30,393, says where Seagate's drawn on our materials or we have drawn on our materials, we are, quote, going to put that in as a demonstrative. So if it's drawn on, it's a demonstrative. Line 17. But this is actually just a photograph, which is not hearsay. Line 25. This is evidence, photographs, pictures of the actual microscope the expert used. Line 8 on page 30,394. A sample taken from the Seagate drive. This is the actual thing that was analyzed by the experts. And there are pictures of it. That's what was at issue when the district court ruled. But it gets even clearer if you turn to we filed a motion before the next day of testimony. We filed something called a motion to admit addressing the issue. Page 21,666. Take the picture there. It's an atomic-level picture of the drive, just the photo. And we say, well, that's admissible because this is what the expert saw when he looked through the microscope. And then we contrast on page 21,667. There's a picture that's annotated. And we say, look, this one has been annotated with the words no match. That one is hearsay because it has an out-of-court statement in it. It's not a mere picture. And so when the motions argue the next day, we get up before the court, 30904. There's three different parts here, unfortunately, where this comes up. We say, the counsel says, we're talking about images Dr. Clark took. Pictures of Seagate drive he took using a standard methodology. No mention of annotations in that colloquy. It's not brought up at all. The court says pictures prepared by an expert in anticipation of litigation are, in fact, hearsay. Not because of annotations. The reason is they do speak to the truth of the matter, certainly. The whole notion of annotations doesn't come up until post-trial motions. But even then, when we filed our motion to admit, we said, quote, to the extent Dr. Clark's images include annotations that Dr. Clark added after taking the images, LMS is agreeable to removing those annotated images. So if someone has a problem with the annotated images, and this is on page 21,667, if anybody had a problem with those images, we said, any annotations, we'll take them out. But the district court, in rejecting the new trial motion, says, she adopts footnote six in Seagate's brief, says, you never offered to remove them. That's just clear error. And even if we hadn't offered to remove them, the annotations issue just didn't arise during the trial. You can't fault us for not removing annotations that nobody had objected to. We were very clear that we objected. You're into your rebuttal. Oh, I apologize. If the court has no further questions now, I'll reserve whatever remains of my time for rebuttal. Thank you. Thank you, Counselor. One moment, Your Honor. I'm just going to grab my other stack. May it please the court, David Gross on behalf of Seagate, and with the court's permission, I'm going to jump right into Your Honor's question at the beginning of the oral argument, as well as Your Honor's question, focusing on the specification. And I want to be very clear that the invention that is claimed, based on the specification, the fundamental feature what's claimed is the causal relationship. In other words, it's not there's an invention, and then somewhere in the spec, they kind of mention in passing something about causation to expand scientific knowledge. The invention is I have discovered that there's this set of variants that are unequal, and they don't all yield uniaxial behavior. Some do, some don't. But I found some that yield uniaxial behavior, and that's my invention that I'm so excited about. And Your Honor mentioned it. Why isn't that just an articulation of a structure that has both uniaxial and broken symmetry? Your Honor, there could have been a claim, it would not have been allowed, that said my invention is limitation number one, any uniaxial behavior. And then down at the bottom, by the way, if it's also symmetry broken, that's the invention. It didn't do that, Your Honor. It said uniaxial, symmetry-broken structure. So the question for Your Honor is, well, why was that coined phrase put there? Why have a phrase uniaxial, symmetry-broken structure? And to come back to where we were at the beginning, they said in the specification, the patentee, we adopt the phrase uniaxial, symmetry-broken. So, Your Honor, we're bringing these together. We're not separately claiming them. Special quoted phrase was clearly a coined phrase under federal circuit law to denote the crystallographic characteristics of these uniaxial materials. Sure, characteristics. I don't understand your argument. Because the whole point of this is uniaxial was known to be preferred for some of this anyway. And what they were looking for was something that had, and I'm going to mess up the science, so go with me if I've got it completely wrong. Correct me, but if I'm in the ballpark, try to go with my question. They were looking for something that would have greater magnetization force or something like that so they could go from horizontal to vertical coating. Is that right? Yeah, the record is Seagate was doing that. And the discovery was that broken symmetry structures would do it, but they still needed it to be uniaxial. So the discovery is that this broken symmetry structure has better magnetization, but you only want to use the ones that have uniaxial behavior as well. It's not that the structure of the broken symmetry causes it. As I understand it, the whole point of the symmetry structure is it provides greater magnetization. You still just need it to be uniaxial for the way the head flips around. Your Honor, I respectfully, if you look at the specification and we look at this, if I may, Your Honor, I appreciate the court's question, but I want to go to the point of counsel kept referring to this phrase, these materials. So uniaxial symmetry broken refers to these materials, and I want to make the point to Your Honor, these materials are discussed in the columns preceding that, and over and over again they say there are materials that are symmetry broken that yield uniaxial behavior, and there are materials that don't, meaning what I'm claiming when I say uniaxial symmetry broken are materials that result in uniaxial behavior, not, generally speaking, uniaxial. I don't see where it directly says that the symmetry broken causes uniaxial. What they need is a symmetry broken structure that has a uniaxial characteristic. Sure, I hear you, Your Honor. Every structure can have two different characteristics, right? Any structure can have different characteristics. And they don't have to be caused by each other. Right, but Your Honor, to be clear, over and over and over again, leading up to this definition that Your Honor was discussing and Your Honor asked about, they were emphasizing the causal relationship between variants. The variants are literally, when you see variants, that's a symmetry broken structure, a set of variants. And they're saying there are variants that cause, yield, result in uniaxial behavior, Your Honor, and there are variants that don't. So they are emphasizing the exact causation question Your Honor is raising, over and over again. The variants? Yeah, it has, Your Honor, it's result in, yield, cause. We have it in our brief. Each of these paired variants not only results in uniaxial energy function. What page are you looking at? Page 30 and I have a brief. Can you point to it in the specification? Yes, Your Honor. It is in 1928-29, and then it's 1956-58. That's results in, yield, and then 1960-63, cannot yield, 24-23, others yield. I'm sorry, Your Honor, I'll go slow. We'll start with 1928-29, results in. Variants, results in, uniaxial energy, 1928-29. And then they do it again and again, Your Honor, and they are very clear that that's the invention. I do want to get to one quick thing, Your Honor, if I may. And that is, in the court below, at Joint Appendix 12587. So I'm turning to 12587 of the Joint Appendix. This is what their expert said. Judge Shuse, this gets to your question. Their expert went over this specification and effectively addressed Judge Rainer's initial question, is causation in this invention? And Judge Shaw's question, what does this get to? I want to read you what their expert said on Joint Appendix page 12587. This is before trial. In the overview of the patent, their expert went through the specification line by line, discussed the specification, and in the overview of the patent at page Joint Appendix 12587, their expert said, first of all, if you go to the middle about five lines down, this symmetry breaking can result in uniaxial anisotropy. And Judge Shuse, there's four sites there. And in those sites, you'll see the same phrase you and I are talking about, uniaxial symmetry broken. In fact, two of the sites have uniaxial symmetry broken structure. So this is their expert going over the specification. I'm literally talking about specification. The expert then says external sources of anisotropy are distinct from the focus of the 988 patent. And then look at what their expert says at the end, which concentrates on and claims the invention, and this goes right to your question, Judge Rainer, of uniaxial anisotropic DCC thymine materials as a result of symmetry breaking, literally saying the invention is the causation. And, Your Honor, this is the overview of the patent citing the specification. So there's a huge waiver issue. Why, then, is the causation not written within the claim? Well, what they decided to do here is say there's symmetry broken structures. We're not claiming all of them. So we're not claiming all symmetry broken structures because, remember, some yield uniaxial and some don't. These variants yield uniaxial, some don't. What we're going to claim is uniaxial symmetry broken structures. How would you write it if you were just claiming the structure and not that there's one resulting in the other? Well, you could certainly have uniaxial up here, and you could have symmetry broken structures somewhere other place, but they put this phrase together to capture their invention, that it's not all symmetry broken structures. It's only uniaxial symmetry broken structures, and those are the variants that result in it. That doesn't tell me anything about whether it's caused by it. That's the problem. I could tell in some of the specification language, but to me, if we're just looking at the claim language, you read it as uniaxial and broken symmetry. Well, Your Honor, I would say this is that when you take a coin phrase that's literally never been used before, never been used since, and you say there's these symmetry broken structures that I'm coining, by the way, they need to be uniaxial, and then you explain that over and over again as having a causal relationship. I mean, the problem is in the context of the invention, it makes sense that it's a structure that has to – he invented the broken structures, but it only works for its purpose if it's uniaxial. It's not that the broken structure has to cause uniaxial. It doesn't work if it's not uniaxial. Well, Your Honor, what the specification does not do is say I mean something else. The causal relationship is the invention. That is the fundamental feature of the invention, and that's why it's claimed the way it is. That's what they're trying to do. So it's a coin term, and if you look at the specification, their expert is right. And by the way, on appeal, they're just ignoring what their expert said. But if their expert is right, they lose. I want to turn to the foreign prosecution history as well because, remember, it's a coin term, so I think it's important to look at what they said. Is it a problem that the coin term is a term of function that describes function as opposed to structure? And the rest of the claim, I mean, it just seems rather odd to have one claim term that goes to the function of the claim stuck right in between what's really 100% a structural claim. I hear you, Your Honor. They do have, you know, when we constructed the hexagonal 1-1 template, we saw the phrase directs the growth. So you're going to see some language about what's happening, you know, in the specification and also in the claim. Here, there is different ways to claim it, but they had a coin phrase, and when you look at how the coin phrase is used in the specification, it is referring to this fundamental feature of causation. Their expert literally agreed and said it explicitly, and I want to go to the foreign prosecution for one minute, which is on Joint Appendix 02100, the Joint Appendix 02100. And this is where they're talking to the Foreign Patent Office, and in a coined term, this is literally the only other time anyone has ever talked about this term. There's no literature after, there's no literature before. And on 02100, they're talking about the application. It's the same specification as what's before this court. So it's a foreign patent application, same specification, and it says, hence, the application not only describes that there are specific subsets that could be used to yield good uniaxial properties, which is what I was talking to you about, Judge Shears. It clearly emphasizes that there are these variants that yield uniaxial behavior. But then it goes down and talks about a variant subset, and this is the one that results in, results in uniaxial behavior. So just like their expert used result in in their expert's discussion of the patent and the specification, they're using results in in their discussion, and they go on to say results in uniaxial magnetic behavior, as this is the lowest energy function, this subset is referred to as a uniaxial symmetry-broken structure. So once again, they're saying the invention is there's these variants that result in uniaxial behavior. I appreciate the point that there's many different ways to draft it, but we believe when you have a coined term where you say I'm not just inventing all variants, I'm inventing only uniaxial variants, and the way you use that term in the specification emphasizes the causal relationship, and then the expert emphasizes the causal relationship, and then they go to foreign prosecution. They emphasize the causal relationship. The time that the expert was doing it, literally mentioning uniaxial symmetry-broken structure, those are the sites that the expert puts in his declaration in that paragraph, and here they're using the exact same phrase. We think there's a fundamental relationship. Two other points, if I may, and that is on the pictures, I'll just make the point that at trial below, they held up a thumb drive, and they had all of these pictures that had been created by their expert, many of which had annotations, and they said that they'd drawn on them, and the judge didn't allow them in. Then they continued to try to get the annotations in, and a motion for reconsideration effectively. The judge said no. The idea that somewhere in a brief during a big trial they mentioned in passing that they'd be willing to take away the annotations is not something for this court, I think, to rule, to try to determine if the judge was wrong when the judge didn't pick them up on their possible offer to remove annotations. That's not an appropriate appeal issue. The judge was exercising her discretion. Was there any testimony on the photographs? Oh, there's extensive. Their experts went through every single photograph, every single annotation, all of them, everything, and they went through everything. They did it in closing. The judge said you can use them as much as you want, and they did, but the annotations, which, by the way, are in their brief. If you look at their brief, the brief has annotated photographs, and that's clear hearsay, and the judge is in her discretion. When someone holds up a thumb drive and talks about we wrote on exhibits, the idea that this judge made some sort of clear error is just, we don't think, reasonable. I want to finish. Is that your cross-appeal? Yes, I'm going to. Do you have a counterclaim or a declaratory judgment action? We do not. Then why is it a proper cross-appeal? Well, there is a sentence in a Federal Circuit case. I know, but you're not asking to change the judgment. It's a defense to infringement, and so it's just an alternative grounds for affirmance. Well, it is an alternative grounds for affirmance. You don't get a cross-appeal on an alternative grounds for affirmance. And, Your Honor, the reason we raised it is because there was a sentence that suggested if we didn't raise it and we were trying to argue in good faith why the law is unclear, that's where we are. I had this court ruled before. I would not have saved a minute, and I certainly don't want to show any disrespect, but if I may go to enablement for just a minute. No, I don't want to hear it unless they do. I don't think it's a problem. I mean, it's a defense if you want to argue it. May I use my time then and not have, I'll just won't save a minute. Yeah, I would use your time on the merits. That's what I'm going to do. So I'm hereby dropping any rebuttal because we can assume the cross-appeal has been dismissed and I'm just arguing for the court. So you're withdrawing your counterclaim? I'm sorry? You're withdrawing your counterclaim? We just want to argue. You don't have a counterclaim, right? Correct, Your Honor. We have an affirmative defense and we are absolutely allowed to argue that as an alternative grounds for removal and I'm going to do that now and I'm not going to come back because, Judge Hughes, I'm assuming we've effectively ruled in this court that that's gone. And so what I want to make the point is they have these broad materials. They identify all these materials that you can mix together. Many of them won't work. They say you've got to get the processing condition just right and the way they solve it, after we show that it's lack of enablement, is they have an expert who says that there's a handbook, doesn't identify what it is, and then says, you know, there's this thing you can do involving sizing, pairing up the sizing, and they add a limitation to the claim that suggests that the claim really is about the size of atoms. So let me ask you this. If we agree with you on claim construction, we don't need to reach any limits, right? Because we would affirm a non-infringement because the jury found no infringement based on the claim construction. Yes, and we're assuming the cross-appeal has been dismissed. Right, so if we disagree with you on claim construction and send it back for a new trial, you would then have different arguments on enablement because it would be a different claim construction. 100 percent, Your Honor. 100 percent. And I will say that in Denix it's clear that you can't just kind of make up some ordinary skill-in-the-art claim limitation that you then use to fight off enablement. Their expert literally just said there's something about sizing atoms, just kind of mentioned it, didn't even talk about the specification, and then said because of that you'd look at handbooks, and that's how they got out of it. We think as a matter of law, under this Court's precedent, this Court could also affirm. And we also think for reasons in our briefs that these errors, there's four reasons that we didn't infringe, and that rises to harmless error under either standard. Thank you, Your Honor. Appreciate it. Thank you, Your Honor. You have a couple of minutes. We'll restore you back to three minutes. Thank you, Your Honor. I'd like to emphasize from the beginning, causation isn't in the claims. The coin, especially because it's a coin phrase, one would look to the definitions in the specification of what the coin phrases mean. And uniaxial anisotropy is right there defined. Symmetry broken is defined. Neither says it's caused by the other. In fact, the phrase uniaxial symmetry broken is defined and used to denote the crystallographic characteristics. It's not a causal thing. It's not the theory underlying it. It's a structure. The claim itself is a structure. I think it's a lot of references.  The broken symmetry results yield. I don't think there's a ton of causes, but I think you pointed to at least one. How do we get around? I understand your argument that this structure has to have two characteristics to work better. It has to be broken symmetry, and it has to be uniaxial. But throughout the specification, it's talking about broken symmetry results in a uniaxial structure. And those are all the inventor's observations, the results of his experiments, his decisions as to what happened. And almost every one of them, except for the abstract, which actually points to lots of causes, is under a heading that says detailed description of preferred embodiments. It's not seeing the meaning of the claims. When you get to the meaning of the claims, what he claimed was a structure that yields the result. He doesn't have to know why, and it would be odd to punish him for speculating or giving his scientific theories as to why, and saying, now that you've tried to explain why, we're going to actually narrow your claims. That would undermine the purpose of advancing the arts by saying, if you think you know why, don't say it, because it's going to get read into your claims, and you end up with narrower claims or invalid claims entirely. Do you agree that if we rule for you outclaims, that this is going to backfire your trial, that they should get another shot at enablement under the new court procedure? Actually, I do not, and there's a specific reason why. The causation element doesn't in any way hurt them on enablement. As a matter of fact, their own expert testified that causation adds an extra step, and it makes it harder. Do we have the discretion to order this trial? This court has the discretion. I don't think they've explained why it would help. In fact, their own expert said causation makes it harder on enablement. You take it out on enablement, it's easier. It's hard to see how it would make causation easier, but the court would have that discretion. Turning quickly to the expert, this was an expert report that was produced after the claim construction, and experts are allowed to conform their reports to the claim construction. You don't waive it by doing that. And then finally, if I could just point to what I think the fundamental invention is, and this is, I think, really critical. What was invented here was a structure, and the structure has three key pieces, right? One is the BCC layer, and that BCC layer, and this is on page 30,000, 766, and 767, is really important because it's powerfully magnetic. Then there is also, it has to have the hexagonal template, and that orients your crystals so that you get your desired magnetism in the right direction, and then on top of that, it has to be symmetry broken. Now, what's key about this is, BCC was known, but the huge part is, if you look at 30,000, 766, 767, it wasn't used before, even though it's powerfully magnetic, because it wasn't uniaxial. It says, high BCC alloys were undesirable to expert plans because they weren't uniaxial. What Dr. Lambeth invented was how to make them uniaxial. Dr. Lambeth invented how to make them uniaxial. He claimed the structure. He's entitled to that structure. Thank you, Josh. Thank you.